UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><div align="center">Plaintiff,</div><br>v.<br><br>MICHAEL ANTHONY LEBOEUF,<br><div align="center">Defendant.</div> | Case No.  19-cr-209 PJH<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>Re: Dkt. No. 37 |

Before the court is the represented motion of defendant Michael Anthony LeBoeuf for reduction of sentence pursuant to the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  The government filed an opposition ("Opp.") to the motion for compassionate release, and counsel for defendant filed a reply ("Reply").  The Probation Office also provided a response to the compassionate release motion.  Having considered the relevant authorities and having reviewed the record and the parties' papers, the court DENIES the motion for compassionate release for the reasons set forth below.

I.      **BACKGROUND**

On May 20, 2019, a grand jury returned an indictment charging defendant with two counts of Receipt of Visual Depiction of Minor Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Counts One and Two); and one count of Possession of Visual Depiction of Minor Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. §§ 2252(a)(4)(b) and (b)(2) (Count Three).  On September 4, 2019,

1   defendant pled guilty pursuant to a written plea agreement to Counts One through Three.

2   On November 27, 2019, the court sentenced defendant to a term of imprisonment of 97

3   months on all three counts to run concurrently; a 10-year term of supervised release; and

4   a special assessment of $300.

5        Defendant is now 39 years old, has served about twelve months in custody, and is

6   presently in the custody of the Bureau of Prisons ("BOP") at the Federal Correctional

7   Institution in Lompoc ("FCI Lompoc"), with approximately 72 months remaining on his

8   prison term, based on a projected release date of August 25, 2026.  He now seeks a

9   reduction of sentence pursuant to the compassionate release provision of § 3582(c)(1)(A)

10  due to concerns about the risk of serious illness or death from exposure to the novel

11  coronavirus disease ("COVID-19") while in BOP custody.

12  **II.    DISCUSSION**

13       **A.    Legal Standard**

14       A court generally may not correct or modify a prison sentence once it has been

15  imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of

16  Criminal Procedure.  *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).  The

17  court may modify a previously imposed sentence upon motion of the BOP or motion of

18  the defendant under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i),

19  as amended by the First Step Act which added a provision to allow defendants, not only

20  the Director of the BOP, to file a motion for reduction of sentence after exhausting

21  administrative remedies or waiting 30 days after the warden's receipt of a request.  *See*

22  *United States v. Shields*, 2019 WL 2359231 at *1 (N.D. Cal. June 4, 2019) (citations

23  omitted).  Section 3582(c)(1)(A)(i) now provides that the court may reduce an imposed

24  term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon

25  motion of the defendant after the defendant has fully exhausted all administrative rights to

26  appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or

27  the lapse of 30 days from the receipt of such a request by the warden of the defendant's

28  facility, whichever is earlier," after considering the applicable factors set forth in section

United States District Court
Northern District of California

United States District Court
Northern District of California

1    3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction"

2    and "that such a reduction is consistent with applicable policy statements issued by the

3    Sentencing Commission."

4              **B.    Requirements for Compassionate Release**

5              As applicable to defendant's motion, compassionate release is warranted if the

6    court finds that extraordinary and compelling reasons warrant such a reduction, after

7    considering the applicable § 3553(a) factors, and that such a reduction is consistent with

8    applicable policy statements issued by the United States Sentencing Commission.  18

9    U.S.C. § 3582(c)(1)(A)(i).  The policy statement applicable to defendant's § 3582(c)(1)(A)

10   motion, U.S.S.G. § 1B1.13, states the statutory requirements of extraordinary and

11   compelling reasons, consideration of § 3553(a) factors, and reduction consistent with the

12   policy statement, and further requires that the court determine that the defendant is not a

13   danger to the safety of any other person or to the community, as provided in 18 U.S.C.

14   § 3142(g).  U.S.S.G. § 1B1.13(2).

15             **1.    Extraordinary and Compelling Reasons**

16             The application notes to the § 1B1.13 policy statement identify physical or medical

17   conditions that meet the "extraordinary and compelling" requirement as those where the

18   defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or

19   medical condition, serious functional or cognitive impairment, or deteriorating physical or

20   mental health because of the aging process, "that substantially diminishes the ability of

21   the defendant to provide self-care within the environment of a correctional facility and

22   from which he or she is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n. 1(A).  In the

23   sealed filings, defendant discloses that he is among people with a medical condition who

24   "**might be at an increased risk** for severe illness from COVID-19" as recognized by the

25   Centers for Disease Control and Prevention.  *See* https://www.cdc.gov/coronavirus/2019-

26   ncov/need-extra-precautions/people-with-medical-conditions.html (updated Aug. 14,

27   2020).  Defendant's disclosed mental health condition, however, does not pose an

28   increased risk of serious complications or death from COVID-19.

United States District Court
Northern District of California

1  It is undisputed that defendant was infected with COVID-19 as reflected in his

2  medical records dated May 6, 2020.  Garfinkle Decl. ¶ 6 and Exh. A (under seal) at 11,

3  18.  Defendant represents that he experienced symptoms of sensory loss, followed by a

4  high fever, night sweats, and hallucinations for four nights, and then followed by weeks of

5  severe fatigue and memory loss.  *Id.* ¶ 6.  Defendant's medical records reflect that he

6  was screened daily for COVID-19 symptoms from May 8 to May 19, 2020, when he

7  registered temperatures ranging from 97.2 to 98.3 degrees, and that he denied

8  symptoms of cough, shortness of breath, muscle pain, sore throat, and/or chills.  *Id.*, Ex.

9  A at 8–9.

10  Defendant has demonstrated that there is a possibility that his medical condition

11  might subject him to heightened risk of complications if he contracted COVID-19, and he

12  has demonstrated that he faces a particularly higher risk of contracting COVID-19 while

13  incarcerated at FCI Lompoc, where two inmates have died and 793 inmates have

14  recovered from COVID-19, though no active cases among inmates are reported as of

15  August 24, 2020.  *See* https://www.bop.gov/coronavirus/.  The government concedes the

16  possibility that chronic health conditions that have been identified by the CDC as

17  elevating the risk of complications due to COVID-19, combined with the likelihood of

18  contracting COVID-19 while incarcerated and suffering severe symptoms as a result,

19  may satisfy the "extraordinary and compelling" standard as set forth in the application

20  note to U.S.S.G. § 1B1.13.  Opp. at 7–8.  The government points out, however, that

21  defendant was diagnosed with his underlying medical condition in 2015 and has been

22  asymptomatic, and that his medical records show that medications for his condition have

23  been dispensed throughout his time at Lompoc, though there was a disruption in

24  medications at some point in April 2020.  Opp. at 8; Lee Decl., Ex. D (medical records

25  filed under seal) at 52-53; Garfinkle Reply Decl. ¶ 2.  Defendant's medical records also

26  show that he tested positive for COVID-19 in early May 2020, and that an

27  electrocardiogram (EKG) taken in June 2020 returned normal findings.  *Id.*

28  Despite the disruption and inconsistency in the delivery of defendant's medications

4

1   since April 2020, Garfinkle Reply Decl. ¶ 2, evidence from his own medical history

2   reflecting the absence of severe symptoms and apparent recovery after contracting

3   COVID-19 in May 2020 demonstrates that he is not at a high risk of serious complications

4   from COVID-19 due to his underlying medical condition, such that his ability to provide

5   self-care in the correctional environment would be substantially diminished.  On this

6   record, defendant's underlying medical condition does not constitute an extraordinary and

7   compelling reason for a reduction of sentence.  *See United States v. Krietzman*, 2020 WL

8   4368191, at *3 (N.D. Cal. July 30, 2020) (denying compassionate release where the

9   defendant had already contracted and recovered from COVID-19); *United States v.*

10  *Shahbazpour,* 2020 WL 3791633, at *2 (N.D. Cal. July 7, 2020) (finding no extraordinary

11  and compelling reason for release where the defendant recovered after testing positive

12  for COVID-19 while incarcerated at FCI Lompoc).

13           **2.**        **Section 3553(a) Factors**

14         Considering the applicable § 3553(a) factors, the court finds that a reduction of

15  defendant's 97-month custodial sentence to time served where he has served only 12

16  months in custody, or about 12% of his prison sentence, would not serve the need for the

17  sentence to reflect the seriousness of the offense, to promote respect for the law, to

18  provide just punishment for the offense, to afford adequate deterrence to criminal

19  conduct, or to protect the public from further crimes of the defendant.  *See* 18 U.S.C.

20  § 3553(a)(2)(A)–(C).  Looking to the nature and circumstances of the offense and the

21  history and characteristics of the defendant, defendant admitted to receiving images of a

22  minor engaged in sexually explicit conduct and possessing child pornography, and the

23  court has considered the victim statements both at sentencing and in opposition to the

24  present motion for compassionate release to find that the severity of defendant's conduct

25  and the impact on the victims warrant the high-end guideline sentence that the court

26  imposed only last year.  Significantly, defendant was subject to a statutory minimum

27  sentence of five years as to Counts One and Two.  Thus, a reduction in sentence would

28  result in a sentence about four years below the mandatory minimum and a disparity

1   compared to the sentences imposed for similar crimes subject to the statutory minimum

2   and under the Sentencing Guidelines.  *See* § 3553(a)(4)(A), (6).  These § 3553(a) factors

3   weigh against a reduction in sentence.

4          The court also considers "the need for the sentence imposed . . . to provide the

5   defendant with . . . medical care . . . in the most effective manner."  18 U.S.C.

6   § 3553(a)(2)(D).  The prison medical records show that defendant continues to receive

7   medical care and medications by prison health services for his underlying medical

8   condition despite the overwhelming demands on health care delivery due to the

9   pandemic, and that he has not suffered severe symptoms or complications despite

10  testing positive for COVID-19 over three months ago.  The government has also

11  presented evidence that BOP has recently taken measures to protect inmates' health at

12  the Federal Correctional Complex in Lompoc, finalizing construction of a completely new

13  hospital care unit to provide medical care for Lompoc inmates, and negotiating a contract

14  for new medical personnel to assist with the outbreak and address personnel shortages.

15  Opp. at 9 (citations omitted).  On this record, the need to provide effective medical care

16  under § 3553(a)(2)(D) does not weigh in favor of a reduction in sentence.

17                    **3.    Danger to Community**

18         With respect to the applicable policy statement set forth in U.S.S.G. § 1B1.13(2)

19  that compassionate release requires a finding that defendant is not a danger to the safety

20  of another person or to the community, the court determines that under the relevant

21  factors of 18 U.S.C. § 3142(g), defendant fails to show that he would not be a danger to

22  the community where his conviction offense involved persuading two minor victims to

23  send him explicit images and possessing other images of child pornography; he also

24  admitted to having intercourse with the victims in his home, though he was not charged

25  with enticement of a minor.  Further, defendant's current release plans, whether to reside

26  with his husband at their apartment or with his mother, do not adequately ensure the

27  safety of the community in light of the evidence of predatory conduct involving use of the

28  internet to locate his victims and inviting them to his home; the letters of support from

community members do not alleviate the risk of danger to vulnerable minor victims that defendant has presented over a period of several years, given that the offense conduct occurred in 2012 and 2013, and another victim described similar predatory conduct by defendant in 2018 while he lived with his husband.  Accordingly, defendant has not met his burden to show that he is not a danger to the safety of others as required for relief under § 3582(c)(1)(A).

### C.    Home Confinement

To the extent that defendant asks the court to order release to home confinement to serve the remainder of his time in custody, the request is denied on the ground that the court has no authority to designate the place of confinement.  The Ninth Circuit recognizes that "[t]he Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."  *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) (citing 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment.")).  The recommendations of the sentencing court to BOP for where the sentence should be served are only given non-binding weight.  *Id.*  "'While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served.  Authority to determine place of confinement resides in the executive branch of government and is delegated to the Bureau of Prisons.'"  *Id.*  (quoting *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984) (per curiam)).  Under Section 3621(b), BOP is authorized to "designate any available penal or correctional facility . . . that the Bureau determines to be appropriate and suitable."  *See Rodriguez v. Smith*, 541 F.3d 1180, 1182 (9th Cir. 2008) ("Under 18 U.S.C. § 3621(b), the BOP has authority to designate the place of an inmate's imprisonment.").  As a discretionary matter, the court declines to make a recommendation to BOP concerning home confinement, as BOP is in the better position to assess suitability for home confinement, particularly given the concerns about releasing defendant, after receiving very limited treatment, to live with his husband at the apartment where he committed the offense conduct and victimized

another minor only two years ago while defendant was living with his husband, as well as concerns about defendant's mother's health and COVID-19-related comorbidities.

**III.     CONCLUSION**

For the reasons set forth above, the motion for reduction of sentence pursuant to the compassionate release provision of § 3582(c)(1)(A) is DENIED.

**IT IS SO ORDERED.**

Dated: August 25, 2020

_/s/ Phyllis J. Hamilton_

PHYLLIS J. HAMILTON
United States District Judge